## UNITED STATES DISTRICT COURT

_____SOUTHERN_____ District of _____NEW YORK_____

HARRIS LESMAN,

           Plaintiff,

- against -

The Metropolitan Museum of Art Long Term Disability Plan and Sun Life Insurance & Annuity Company of New York,

           Defendants.

SUMMONS IN A CIVIL CASE

CASE NUMBER:

**06 CV 2946**

JUDGE HOLWELL

TO: (name and address of defendants)

The Metropolitan Museum of Art Long Term Disability Plan
c/o The Metropolitan Museum of Art
1000 Fifth Avenue
New York, NY  10028

Sun Life Insurance & Annuity Company of New York
One Sun Life Executive Park
Wellesley Hills, MA  02481

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

BINDER & BINDER, P.C.
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON
CLERK

(BY) DEPUTY CLERK

APR 17 2006
DATE

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

06 CV 2946

------------------------------------------------X
HARRIS LESMAN,

                Plaintiff,

  -against-

THE METROPOLITAN MUSEUM OF ART LONG
TERM DISABILITY PLAN and SUN LIFE
INSURANCE & ANNUITY COMPANY OF
NEW YORK,

                Defendants.
------------------------------------------------X

Civil
Action No.:

**COMPLAINT**

Plaintiff, Harris Lesman, by his attorneys, BINDER & BINDER, P.C., for his Complaint against the Defendants, The Metropolitan Museum of Art Long Term Disability Plan (the "LTD Plan") and Sun Life Insurance & Annuity Company of New York ("Sun Life"), hereby alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2. Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001, *et seq.*) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4. The Metropolitan Museum of Art, is the named Plan Administrator, with a home office located at 1000 Fifth Avenue, New York, New York 10028. Therefore, venue is proper in the Southern District of New York because that is where the LTD Plan is administered.

### NATURE OF ACTION

5. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6. The LTD Plan provides long term disability benefits to employees of The Metropolitan Museum of Art (the "Metropolitan Museum"). As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action. Said benefits were effective at all times relevant hereto.

7. Claims for benefits are administered and paid through a Long Term Disability Policy, issued by Defendant, Sun Life. Defendant, Sun Life, has made all of the claims decisions in this matter.

### STANDARD OF REVIEW

8. The Summary Plan Description ("SPD") in force at the time Plaintiff became disabled did not contain a grant of discretion to Sun Life or the Plan Administrator.

9. As such, this Court must conduct a *de novo* review of the denial of Plaintiff's claim under Firestone Tire & Rubber Co. v. Bruch.

## THE PARTIES

10. Plaintiff was born on September 16, 1946, is presently 59 years old, and is a resident of Howard Beach, New York.

11. Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA. The Metropolitan Museum of Art is the named Plan Administrator and the agent for service of legal process, with a home office located at 1000 Fifth Avenue, New York, New York 10028.

12. Defendant, Sun Life, is an incorporated insurance company licensed to conduct the business of insurance in New York. Upon information and belief, Sun Life is the named Claims Administrator. Sun Life's address is One Sun Life Executive Park, Wellesley Hills, Massachusetts 02481.

## STATEMENT OF FACTS

Plaintiff's Occupation:

13. Plaintiff became an employee of the Metropolitan Museum on June 15, 1987. Plaintiff continued working for the Metropolitan Museum through March 19, 2004, on which date he became disabled. As such, he was a covered participant in the LTD Plan.

14. Prior to and including March 19, 2004, Plaintiff was employed by the Metropolitan Museum as a Manager of Technical Support. In this capacity, Plaintiff was responsible for writing and maintaining various operating systems on personal computers.

15. Plaintiff's pre-disability income was about $102,050 per year.

16. For the period beginning prior to March 19, 2004, and at all relevant times hereto, Plaintiff, together with other regular employees of the Metropolitan Museum, was covered as a participant under the LTD Plan.

The Terms of the LTD Plan:

17. The LTD Plan provides benefits to its participants through a Group Disability Policy (the "Group Policy") issued and administered by Sun Life.

18. The Group Policy provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability. Immediately prior to the onset of his disability, Plaintiff was an active employee working a minimum of 35 hours per week, and as such, was covered under the Group Policy.

19. The monthly benefit is determined based on a set percentage (60%) of the employee's pre-disability earnings, with a maximum monthly benefit of $15,000. The monthly benefit is reduced by "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

20. In Plaintiff's case, the Group Policy provides for a benefit of approximately $5,102.50 per month, less the amount of "Other Income Benefits," as defined by the Group Policy.

21. Long Term Disability benefits are to commence after an "Elimination Period" of 180 days.

22. In the instant matter, Plaintiff's Long Term Disability benefits should have commenced around September 14, 2004, the expiration of the Elimination Period.

23. The maximum benefit period under the LTD Plan extends to the claimant's 65th birthday, provided the period of total disability begins prior to age 60, which is the case herein.

24. The LTD Plan defines "Total Disability" or "Totally Disabled" as follows:

> *Total Disability or Totally Disabled means during the Elimination Period and the next 60 months of Total Disability, the Employee, because of Injury or Sickness, is unable to perform all of the material and substantial duties of his own occupation. After benefits have been paid for 60 months, the Employee will continue to be Totally Disabled if he is unable to perform all of the material and substantial duties of any occupation for which he is or becomes reasonably qualified for by education, training or experience.*
>
> *The loss of a professional or occupational license or the inability to obtain or qualify for a license for any reason does not, in itself, constitute Total Disability.*
>
> *To qualify for benefits, the Employee must satisfy the Elimination Period with the required number of days of Total Disability,*

*Partial Disability or a combination of Total or Partial days of Disability.*

25. The LTD Plan also requires a claimant to provide proof of continued Total or Partial Disability and have regular and continuing care by a Physician who provides appropriate treatment by means of examination and testing in accordance with the disabling condition.

26. The LTD Plan gives Sun Life the right to examine Plaintiff. The LTD Plan states:

*Sun Life (N.Y.), at its own expense, has the right to have any person, whose Injury or Sickness is the basis of a claim:*

1. *examined by a Physician, other health professional or vocational expert of its choice; and/or*
2. *interviewed by an authorized Sun Life (N.Y.) Representative.*

*This right may be used as often as reasonably required.*

27. The LTD Plan requires Plaintiff to apply for apply "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

28. Moreover, if Plaintiff does not apply for any "Other Income Benefit" (*e.g.* Social Security Disability benefits), Sun Life can penalize Plaintiff by estimating the amount of the "Other Income Benefit" and reducing the amount of the LTD benefit by that amount. The LTD Plan states:

*If, at the time of calculating any LTD benefit payments, the benefit an Employee is entitled to apply for and receive under any Other Income Benefits has not been awarded nor denied or if they have been denied and are being appealed, Sun Life (N.Y.) will estimate the amount of that Other Income Benefit. The estimate will be used to reduce the amount of the LTD benefit payments until the Other Income Benefit has been awarded or denied. However, the estimate will not be used if, within six months of becoming Totally or Partially Disabled, the Employee meets both of the following conditions:*

1. *the Employee has applied for the Other Income Benefits; and*

2. *the Employee completes and signs a Reimbursement Agreement. This Agreement states that the Employee promises to reimburse Sun Life (N.Y.) any overpayment caused by an award of Other Income Benefits.*

29. On July 27, 2004, Plaintiff signed a Reimbursement Agreement agreeing to immediately notify Sun Life of an award of Social Security Disability benefits and agreeing to "pay back all amounts of such advances over and above the amounts to which I would be entitled under the policy provisions."

Plaintiff's Disability:

30. Plaintiff was forced to stop working on March 19, 2004, due to Arteriosclerotic Heart Disease, Congestive Heart Failure, Diabetes Mellitus, Ulcerative Colitis and a history of Myocardial Infarction.

31. Plaintiff was diagnosed with the above medical conditions by his various treating physicians.

32. An Echocardiogram dated September 18, 2003, revealed mildly thickened aortic valve leaflets; mildly thickened mitral valve leaflets; moderately reduced left ventricular systolic function; hypokinetic basal posterior, apical posterior and apical lateral segments; and an ejection fraction of 35%.

33. An Echocardiogram dated March 4, 2004, revealed thickened aortic and mitral valve leaflets; mildly enlarged left ventricular chamber size with moderately reduce left ventricular systolic function; hypokinetic posterior and lateral walls; mild mitral regurgitation; and an ejection fraction of 35 – 30%.

34. A Stress Spect Sestamibi Study dated May 10, 2004, revealed severe large fixed inferior wall defect, severe inferolateral defect with partial improvement consistent with ischemia and residual scar, moderate fixed mid anterior wall defect, and a left ventricular ejection fraction of 45%. The patient exercised for eight (8) minutes using the Bruce Protocol and the test was terminated due to shortness of breath and chest pain.

35. A colonoscopy dated March 2, 2004, revealed external hemorrhoids; ulcerative proctosigmoiditis, multiple rectal/anal polyps; sigmoditis; and multiple polyps of the colon.

36. In an Attending Physician Statement dated August 9, 2004, treating physician, Aaron Shlomo Cynamon, M.D., who is Board Certified in Internal Medicine with a subspecialty

in Gastroenterology, rated Plaintiff's physical impairments as Class 5 – Severe limitation of functional capacity; incapable of minimum (sedentary) activity. Dr. Cynamon opined that Mr. Lesman can stand/walk for less than one (1) hour total, sit for one (1) to three (3) hours total, and drive for one (1) to three (3) hours total in a normal day; Mr. Lesman cannot bend, squat, climb, and kneel; and can lift a maximum of one (1) pound.

37. In an Attending Physician Statement dated August 11, 2004, treating cardiologist, Chaim S. Levine, M.D., who is Board Certified in Internal Medicine with a subspecialty in Cardiovascular Disease, rated Plaintiff's physical impairments as Class 4 – Moderate limitations of functional capacity; capable of clerical/administrative (sedentary) activity.

38. However, in the same statement, Dr. Levine opined that Mr. Lesman cannot stand/walk at all, can only sit for one (1) to three (3) hours total and drive for one (1) to three (3) hours total in a normal workday; Mr. Lesman cannot bend, squat, climb, twist body, push, pull, balance, kneel, or crawl; and can lift a maximum of five (5) pounds.

39. The residual functional capacity assessments completed by both of Plaintiff's treating physicians indicate physical limitation which preclude even sedentary work.

40. Plaintiff has received, and continues to receive, appropriate medical treatment for his medical conditions from his treating physicians.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

41. With regard to Plaintiff's claims for benefits under the LTD Plan, he continued to work through March 19, 2004.

42. On March 19, 2004, Plaintiff was forced to stop working because of Arteriosclerotic Heart Disease, Congestive Heart Failure, Diabetes Mellitus, Ulcerative Colitis, and a history of myocardial infarction.

43. In compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for long-term disability insurance benefits.

44. By letter dated January 3, 2005, Sun Life notified Plaintiff that it was denying his claim for long-term disability benefits, as his medical conditions do not meet the definition of Total Disability contained in the Policy.

45. Although the Group Policy explicitly gives Sun Life the right to have Plaintiff examined by a physician of its choice, the carrier chose not to exercise this right.

46. This adverse decision was based in large part on a review of the information in Plaintiff's file by Paul W. Sweeney, M.D., an outside consultant selected by Professional Disability Associates ("PDA") and paid by Sun Life. Dr. Sweeney opined, without the benefit of an actual examination, that the medical records do not support the limitations recommended by Drs. Cynamon and Levine.

47. As a file review doctor, Dr. Sweeney never examined Plaintiff and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, Dr. Sweeney had a pecuniary interest in finding Plaintiff not disabled.

48. By letter dated February 8, 2005, Plaintiff's counsel requested copies of all relevant documents, including a complete copy of Plaintiff's claim file, so that Plaintiff could receive the full and fair review he was entitled to under ERISA.

49. Sun Life received this request on February 11, 2005.

50. Sun Life failed to provide Plaintiff's counsel with a complete copy of Mr. Lesman's claim file.

51. Plaintiff applied for and was awarded Social Security Disability Benefits. Plaintiff's Notice of Award from SSA is dated February 22, 2005. Plaintiff was found to be disabled under the Social Security Act with an onset date of March 24, 2004.

52. The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Plan.

53.   Sun Life failed to reconcile the conclusion of the Social Security Administration, that Mr. Lesman was totally disabled, with its conclusion that he was not totally disabled under a far less stringent definition of disability.

54.   In addition, Sun Life receives a financial benefit from the Social Security Disability award as a result of the policy offset provisions.

55.   By letter dated June 28, 2005, Plaintiff's counsel formally requested an administrative appeal of Sun Life's adverse decision and submitted comments and additional medical documentation to Sun Life.

56.   As part of its comments, Plaintiff's counsel requested the missing relevant documentation, which included more information regarding Sun Life's in-house medical consultant, Marcia Haley, as well more information regarding the role of numerous Sun Life personnel and the meaning of various abbreviations used by Sun Life in its claim file. To date, Sun Life has not responded to these requests.

57.   By letter dated October 11, 2005, Sun Life issued a denial of Plaintiff's long-term disability claim and noted that all administrative remedies have been exhausted.

58.   This final denial was based on a file review conducted by "Independent Peer Review" doctor, Dianne Zwicke, M.D., who never examined Plaintiff.

59.   Once again, Sun Life chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically acceptable evidence has been provided by Mr. Lesman's treating doctors, both of whom found him to be totally disabled.

60.   In seeking to further its own pecuniary interest, Sun Life has denied Plaintiff of his right to a full and fair review of the denial of his claim, as required by ERISA.

61.   Sun Life, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Mr. Lesman.

62.   The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Mr. Lesman and other Plan participants.

63. The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

64. By allowing Sun Life to mishandle Plaintiff's claim as it did, the LTD Plan failed in its fiduciary duty to Mr. Lesman.

65. As such, the LTD Plan failed to adequately monitor, control and correct Sun Life's improper actions.

66. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

67. The adverse claim decisions rendered in the instant action have been made by Sun Life, which has a pecuniary interest in denying claims.

68. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

69. Sun Life's decisions were not supported by the medical evidence and were not supported by the applicable plan language.

70. Sun Life's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

71. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to the receipt of Long-Term Disability benefits retroactive to March 19, 2004, and continuing to the present under the LTD Plan.

### AS AND FOR PLAINTIFF'S CLAIM FOR
### PENALTIES UNDER ERISA §502(c)(1)

72. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "71," as if fully set forth herein.

73. On February 8, 2005, Plaintiff's counsel requested copies of all relevant documents concerning Mr. Lesman's claim, so that Plaintiff could exercise his right to a full, fair and meaningful review process under ERISA.

74. Pursuant to ERISA § 502, Defendant, was required to provide Plaintiff with the plan documents within 30 days of his request, or by March 13, 2005.

75. Plaintiff's counsel received an incomplete response from Sun Life on March 2, 2005, but substantial and significant relevant documentation was obviously missing from the copy of the claim file provided by the carrier.

76. Plaintiff's counsel demanded that the missing documentation be provided in letters dated June 28, 2005, and October 19, 2005.

77. As a result of Sun Life's refusal and failure to produce the missing documentation, Plaintiff has suffered substantial prejudice in that he has been denied a full, fair and complete review of the denial of his claim, as he is entitled to under ERISA.

78. To date, Sun Life has not provided Plaintiff copies of this vital information.

79. As a result of Sun Life's failure to provide Plaintiff with all of the relevant documents, and the resulting prejudice that Mr. Lesman has suffered, Plaintiff is entitled to penalties against Sun Life in the amount of $110 per day, for the period of March 13, 2005, through the present and continuing until Sun Life produces the missing documentation.

WHEREFORE, Plaintiff respectfully requests the following relief:

a. That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on March 19, 2004, and that he continues, without interruptions, to be disabled within the terms of the LTD Plan;

b. That, after making such a determination, the Court grant Plaintiff appropriate legal

relief and order Defendants, the LTD Plan and Sun Life, to compensate Plaintiff for his disability in accordance with the terms of the LTD Plan, retroactive to March 19, 2004;

  c. That the Court award Plaintiff penalties against the Sun Life in the amount of $110 per day, for the period of March 13, 2005, through the present and continuing until Sun Life produces the missing documentation.

  d. That the Court award Plaintiff his attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

  e. That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which he may be entitled.

Dated: April 12, 2006
   Ronkonkoma, New York

                BINDER & BINDER, P.C.

By: *[signature]*
Harry J. Binder (HJB 5450)
2805 Veterans Memorial Highway
Suite 20
Ronkonkoma, New York 11779
Telephone: (631) 648-4700
Facsimile: (631) 670-2569